IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Tracey Belcher, | ) | |
| | ) | C.A. No. 6:05-3293-HMH |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **OPINION AND ORDER** |
| Verizon Wireless Short Term | ) | |
| Disability Plan, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court for review of the Verizon Wireless Short Term Disability Plan administrator's decision to deny additional short-term disability ("STD") benefits to Tracey Belcher ("Belcher") under a plan governed by ERISA.[1] Belcher seeks benefits pursuant to 29 U.S.C. § 1132(a)(1)(B) and attorney's fees and costs pursuant to 29 U.S.C.§ 1132(g). (Joint Stipulation ¶ 1.) The parties have filed a joint stipulation ("J.S.") and memoranda in support of judgment pursuant to the court's Specialized Case Management Order for ERISA benefits cases. The parties agree that the court may dispose of this matter consistent with the joint stipulation and memoranda. (J.S. ¶ 8.)

The parties dispute (1) the appropriate standard of review; and (2) whether the Verizon Wireless Short Term Disability Plan's claims administrator, Metropolitan Life Insurance Company ("MetLife"), abused its discretion in denying Belcher STD benefits from August 6, 2005, until October 31, 2005. (J.S. ¶ 7; Pl.'s Mem. Supp. J. 14-15.) For the reasons below, the

---

[1]Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461.

1

court finds that the abuse of discretion standard applies, and MetLife did not abuse its discretion in denying Belcher STD benefits from August 6, 2005, until October 31, 2005.

## I. Factual and Procedural History

Belcher worked as a customer service representative for Cellco Partnership d/b/a Verizon Wireless ("Verizon Wireless"), which sponsors the Verizon Wireless Short Term Disability Plan, which was effective August 2003 ("August 2003 Plan"). (R. at 4 (August 2003 Plan).) Verizon Wireless funds the Plan's STD benefit and MetLife administers the Plan. (Id. at 4, 6 (August 2003 Plan).) On June 24, 2005, Belcher made an oral claim for STD benefits asserting that she was suffering seizures and depression. (Id. at 63, 84.) MetLife obtained Belcher's medical records from her neurologist, Dr. D. Couron Cunningham ("Dr. Cunningham"). (Id. at 198-202.) MetLife determined that Belcher was entitled to STD benefits, from June 18, 2005, to July 15, 2005, to allow time for her seizure medicines to reach a certain level. (R. at 183 ( Letter from MetLife to Belcher of 7/14/05).) Belcher sought additional STD benefits, asserting that her claim was stress-related. MetLife reviewed the records of Belcher's internist, Dr. Naveen Saxena ("Dr. Saxena"), and awarded STD benefits from July 16, 2005, to August 5, 2005. (Id. at 182 ( Letter from MetLife to Belcher of 7/26/05).) Dr. Saxena's records included a note that stated as follows:

> Ms. Belcher is presently unable to work. This status will be re-evaluated at next appt. on 8/5/05. She has not been referred to a psychologist; this issue will be addressed after patient has chance to adjust to Lexapro.

(Id. at 191.) MetLife terminated Belcher's STD benefits effective August 6, 2005. (Id. at 176-77 ( Letter from MetLife to Belcher of 8/18/05).) As such, Belcher received eight weeks of STD benefits in total. Belcher timely appealed the termination of her STD benefits, which MetLife

denied, finding that medical documentation did not support a finding of disability. (Id. at 152

(Letter from MetLife to Belcher of 9/30/05).)

      The August 2003 Plan provides in pertinent part as follows:

An employee is considered disabled under the STD component of the Managed Disability Plan when the employee is absent from work because of impairment for which there is material medical evidence that:

>  The employee cannot perform the Essential Functions of his or her job at Verizon Wireless; . . .
> 
> . . . .

**Essential Functions** - Functions normally required for the performance of an occupation and which cannot be reasonably omitted or modified. However, if you become disabled, MetLife will consider you able to perform Essential Functions at the required pre-disability level if you are working or have the capacity to perform such Essential functions at least 37.5 hours per week.

(J.S. ¶ 6.) Furthermore, the August 2003 Plan provides as follows:

**What the STD Component of the Managed Disability Plan Doesn't Cover**
. . . .

Disabilities related to a condition for which the employee was not under the Appropriate Care and Treatment and for which the employee cannot provide acceptable objective medical evidence, as determined by MetLife in its sole discretion; . . . .

(R. 12 (August 2003 Plan).) Under the August 2003 Plan, STD benefits end on the earliest of:

  • The date you return to work full-time;
  • The date MetLife no longer certifies you as disabled; or
  • The date on which the 26-week maximum STD benefit period ends.

STD benefits will end before any of the above if:
• You fail to provide satisfactory proof of your disability, if requested by MetLife;
. . . .

(Id.)

Belcher alleges that she is entitled for STD benefits from August 6, 2005, to October 31, 2005, because of depression and anxiety. (Pl.'s Mem. Supp. J. 5.) Belcher submits that she is not seeking STD benefits for November 1, 2005, to November 28, 2005, because the plan effective November 2005 ("November 2005 Plan") requires objective medical evidence. (Id. 6.) Belcher concedes that "she does not have 'objective medical evidence' to prove her conditions because to the best of Plaintiff's knowledge there is no objective medical evidence that can be provided to verify the psychiatric problems that plagued her." (Id. 5-6.) However, Belcher argues that under the terms of the August 2003 Plan, which applied when MetLife denied her claim, objective medical evidence was not required. The Plan argues that objective medical evidence was required, and, that MetLife did not abuse its discretion in denying Belcher additional STD benefits.

## II. Discussion of the Law

### A. Standard of Review

The parties dispute the applicable standard of review. The Plan argues that the appropriate standard is abuse of discretion, which provides that the administrator's "discretionary decision will not be disturbed if reasonable, even if the court itself would have reached a different conclusion." Booth v. Wal-Mart Stores, Inc., 201 F.3d 335, 341 (4th Cir. 2000); (Def.'s Reply Pl.'s Mem. Supp. J. 2.). A decision is reasonable if it is supported by substantial evidence. "Substantial evidence . . . is evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." LeFebre v. Westinghouse Elec. Corp., 747 F.2d 197, 208 (4th Cir. 1984) (internal quotation marks omitted), abrogated by

implication on other grounds by Black & Decker Disability Plan v. Nord, 538 U.S. 822 (2003). Belcher argues that a modified abuse of discretion standard applies because MetLife was operating under a conflict of interest. (Pl.'s Mem. Supp. J. 14-15.)

Under the terms of the August 2003 Plan, MetLife has discretionary authority. (J.S. ¶ 3.) "[W]hen an administrator . . . with discretion is operating under a conflict of interest such that its decision to award or deny benefits impacts its own financial interests, that conflict must be weighed as a facto[r] in determining whether there is an abuse of discretion." Bernstein v. CapitalCare Inc., 70 F.3d 783, 787 (4th Cir. 1995) (internal quotation marks omitted); see Bedrick v. Travelers Ins. Co., 93 F.3d 149, 152 (4th Cir. 1996) ("Inasmuch as the law is highly suspect of fiduciaries having a personal interest in the subject of their trust, the abuse of discretion standard is not applied in as deferential a manner to such plans.") (internal quotation marks omitted).

Belcher argues that MetLife was operating under a conflict of interest because it is the administrator of the STD benefits and funds and administers the long term disability ("LTD") benefits under the Plan. Cf. Bynum v. Cigna Healthcare of North Carolina, Inc., 287 F.3d 305, 312 (4th Cir. 2002) (finding that a conflict of interest existed because the insurance company administered the plan and also insured the plan). MetLife administers, but does not insure, the STD benefits under the Plan. Verizon Wireless funds the STD benefits under the Plan. Belcher argues that MetLife's insuring the LTD benefits under the August 2003 Plan, which applies once STD benefits are exhausted, evidences a conflict of interest. The court disagrees.

STD benefits, not LTD benefits, are at issue in this case. Belcher has the burden of presenting evidence of a conflict of interest, and the only argument in support of a conflict, that

5

MetLife funds and administers the LTD benefits under the Plan, is insufficient.  See Colucci v. Agfa Corp. Severance Pay Plan, 431 F.3d 170, 180 (4th Cir. 2005); see also Hedin v. Cingular Wireless, LLC, No. 04-CV-0406, 2006 WL 346429, at *3 (N.D. Okla. Feb. 13, 2006) (finding that although MetLife insured and funded the LTD benefits under the plan, "MetLife did not operate under an inherent conflict of interest in their review of plaintiff's STD benefits claim where such benefits were paid by Cingular" and that "plaintiff ha[d] failed to present persuasive evidence of a proven conflict of interest").  The court finds that Belcher has failed to submit sufficient evidence to establish that MetLife's role as administrator of the STD benefits under the Plan creates a conflict of interest.  As such, the abuse of discretion standard applies.

### B.  Denial of STD Benefits

The Plan argues that MetLife did not abuse its discretion because Belcher "failed to provide material medical evidence that she could not perform the Essential Functions of her job at Verizon Wireless" as required by the August 2003 Plan.  (Def.'s Reply 14.)  The court agrees.

"The plain language of an ERISA plan must be enforced in accordance with its literal and natural meaning."  Kress v. Food Employers Labor Relations Ass'n, 391 F.3d 563, 568 (4th Cir. 2004) (internal quotations marks omitted).  "The award of benefits under any ERISA plan is governed . . . by the language of the plan itself.  If the denial of benefits is contrary to the clear language of the Plan, the decision [of the fiduciary] will constitute an abuse of discretion."  Lockhart v. United Mine Workers of Am. 1974 Pension Trust, 5 F.3d 74, 78 (4th Cir. 1993) (internal quotations marks and citations omitted).

Belcher argues that "the 2003 version of the plan makes no reference to any requirement of proof by objective medical evidence and does specifically recognize that benefits may be paid

6

for 'mental illness.'" (Pl.'s Mem. Supp. J. 19.) Further, Belcher alleges that "[d]espite the lack of requirement of proof by way of objective medical evidence prior to November 1, 2005, the plan denied the Plaintiff's claim based upon that factor." (Id.)

However, the August 2003 Plan does require proof of disability with objective medical evidence. In Belcher's discussion of the differences between the August 2003 Plan and November 2005 Plan, Belcher emphasizes that "the November 2005 plan even has an exclusion for disabilities that cannot be demonstrated by way of 'objective medical evidence.'" (Id. 5.) The exclusion in the November 2005 Plan states that STD does not cover "[d]isabilities related to a condition for which the employee was not under the *Appropriate Care and Treatment* and for which the employee cannot provide acceptable objective medical evidence, as determined by MetLife in its sole discretion." (R. 53 (November 2005 Plan).) The August 2003 Plan required "material medical evidence" that Belcher could not perform the essential functions of the job. (Id. 8 (August 2003 Plan).) However, the August 2003 Plan also contains the same exclusion of STD benefits as the November 2005 Plan, stating that STD does not cover disabilities "for which the employee cannot provide acceptable objective medical evidence, as determined by MetLife in its sole discretion." (Id. 12 (August 2003 Plan).) Belcher concedes that she "did not provide objective medical evidence." (Pl.'s Mem. Supp. J. 5-6.) Based on the foregoing, under the plain language of the August 2003 Plan, Belcher is not entitled to STD benefits from August 6, 2005, to October 31, 2005.

Moreover, a review of the record reveals that MetLife's decision was supported by substantial evidence. MetLife authorized an independent medical review of Belcher's medical records by a neurologist, Dr. Joseph Jares, III ("Dr. Jares"), and a psychiatrist, Dr. Reginald

Givens ("Dr. Givens"), both of whom concluded that there was no objective medical evidence that Belcher could not perform the essential functions of her job. (R. at 170, 156-61, 162-66.)

Dr. Jares found as follows:

> Ms. Belcher's history is suggestive of a seizure disorder but there is poor description of the events other than Ms. Belcher's own self-report. There are no corroborating eye witness reports. There is no report of any prolonged or postical state. She is alleging increased frequency of her attacks. There is no evidence of sub-therapeutic dosage of Tegretol and probably non-compliance for sub-therapeutic dosage of Depakote. There are no reports of an EEG or MRI submitted. There is no seizure calendar submitted. In terms of alleged sleep apnea, there is no report of excessive day time sleepiness, un-refreshing sleep, nocturnal apnea, Epworth sleepiness scale results or the sleep study itself submitted.
>
> In terms of retained abilities, there is insufficient data supplied to support a neurological contraindication to Ms. Belcher working in a sedentary occupation. She may have expected absences on dates when she has a seizure but other than this, there is no objective evidence to support inability of Ms. Belcher to perform her normal job activities.

(Id. at 158.) Dr. Jares concluded that Belcher had no functional limitations beyond August 5, 2005. (Id. at 159.)

> Dr. Givens noted,
>
> Specifically the objective, clinical findings lacking from the medical records to support this is no documentation of suicidality, homicidality, or psychotic symptomatology, such as delusional thoughts or hallucinations. Severity of symptomatology is also lacking for any psychiatric symptoms. There is also insufficient objective evidence regarding cognitive dysfunction. Specifically, there is lack of sufficient objective evidence regarding mental status examination findings supporting cognitive dysfunction.

(Id. at 164.) Based on Dr. Jares' and Dr. Givens' findings and the terms of the August 2003 Plan, MetLife denied Belcher's appeal on September 30, 2005, because the medical documentation did "not support a disability that would prevent [Belcher] from performing the essential functions of [her] job." (Id. at 153 (Letter from MetLife to Belcher of 9/30/05).) In its

8

September 30, 2005, letter MetLife quoted the following relevant language from the August 2003 Plan that was considered in making the appeal determination:

> You may be eligible for STD benefits if you have an illness, injury or condition that causes a physical or mental change that prevents you from working.
> An employee is considered disabled under the STD component of the Managed Disability Plan when the employee is absent from work because of impairment for which there is material medical evidence that:
> • The employee cannot perform the Essential Functions of his or her job at Verizon Wireless;
> • The employee must not be engaged in any other job/occupation or earn any self-employment income during the STD application process or while he or she is receiving STD benefits.
>
> The STD Component of the Managed Disability Plan does not provide benefits for:
> • Disabilities related to a condition for which the employee is not under the Appropriate Care and Treatment and for which the employee cannot provide acceptable objective medical evidence, as determined by MetLife in its sole discretion.

(Id. 152-53.) MetLife conducted a courtesy review after the final appeal determination. MetLife authorized a third independent review by a psychiatrist, Dr. Ernest Gosling ("Dr. Gosling"), who concluded, after a review of Belcher's medical records, that "the medical documentation does not . . . support a functional impairment that would prevent the employee from performing the duties of her own occupation. . . ." (Id. at 126 (Report of Dr. Gosling).)

MetLife conducted a second courtesy review after Belcher submitted an unsigned report allegedly prepared by Dr. Saxena. (Id. 130-33 (Report of Dr. Saxena).) The report stated that Belcher had a poor prognosis of returning to work. (Id.) Under the heading "check all manifestations listed below that prohibit your patient from performing his/her job," it indicated that Belcher was "extremely sad" and her speech was soft. (R. at 131.) In a letter to Belcher dated November 15, 2005, MetLife concluded that this new information did not change the

9

previous decision to deny Belcher's claim.  (Id. at 127 ( Letter from MetLife to Belcher of 11/15/05).)

Based on the foregoing, MetLife properly applied and considered the terms of the August 2003 Plan and the medical evidence in the record in denying Belcher's claim.  Belcher failed to provide material medical information that she could not perform the essential functions of her job.  Further, there was a lack of objective medical evidence to support a finding of disability.

In addition, Belcher's argument that MetLife improperly altered the terms of the August 2003 Plan in deciding her claim by requiring "objective medical evidence" as opposed to "material medical evidence" does not alter the court's analysis.  Belcher submits that "material medical evidence" is different from "objective medical evidence."  However, MetLife has the discretion to interpret arguably ambiguous terms.  Colucci, 431 F.3d at 176.  Moreover, as discussed above, the August 2003 Plan specifically excludes coverage of disabilities that cannot be established with objective medical evidence.  (R. at 12 (August 2003 Plan).)  Based on the foregoing, MetLife did not abuse its discretion as the decision was supported by substantial evidence.

Finally, Belcher argues that because mental illness cannot be proven by objective medical evidence, any requirement of the submission of objective medical evidence defeats the reasonable expectation that mental illness would be covered under the August 2003 Plan.  This argument is without merit.  Belcher relies on Mitchell v. Eastman Kodak Co., 113 F.3d 433, 442-43 (3rd Cir. 1997), for the proposition that it is arbitrary and capricious to deny a claimant LTD benefits on the basis of a lack of objective medical evidence when a certain condition

cannot be established with objective medical evidence.  In Mitchell, the Third Circuit interpreted the plan administrator's decision as requiring "clinical evidence establishing the etiology of [chronic fatigue syndrome]."  Id. at 442.  The Third Circuit concluded that "it would defeat the legitimate expectations of participants in the [plan] to require those with [chronic fatigue syndrome] to make a showing of clinical evidence of such etiology as a condition of eligibility for LTD benefits."  Id. at 443.

In the case at bar, the decision to deny Belcher STD benefits was based on the lack of evidence that she could not perform the essential functions of her job.  Notably, MetLife approved eight weeks of STD benefits for Belcher.  MetLife did not require Belcher to prove the etiology of her epilepsy and depression, but to prove only that her limitations prevented her from performing the essential functions of her job.  Dr. Jares and Dr. Givens analyzed Belcher's medical information in the context of how it affected her ability to perform the essential functions of her job.

> Dr. Givens concluded that
>
> [a]ccording to objective evidence in the medical records, there is insufficient objective evidence to support a psychiatric impairment.  There is insufficient objective evidence from a psychiatric perspective to support specific limitations regarding ability to function or other specific restrictions due to safety issues [which] would need to be placed on Ms. Belcher due to psychiatric illness.

(Id. 163.)  Further, Dr. Givens noted that "[b]ased upon objective evidence in the medical records from a psychiatric perspective, Ms. Belcher retains ability to engage in occupational functioning requiring understanding and memory, sustained concentration and persistence, and social interaction in adaptation."  (Id.)  Dr. Jares concluded that

11

> [i]n terms of retained abilities, there is insufficient data supplied to support a neurological contraindication to Ms. Belcher working in a sedentary occupation. She may have expected absences on dates when she has a seizure but other than this, there is no objective evidence to support inability of Ms. Belcher to perform her normal job activities.

(Id. 156-59.) MetLife denied Belcher's appeal because the medical documentation did "not support a disability that would prevent [Belcher] from performing the essential functions of [her] job." (R. at 153 ( Letter from MetLife to Belcher of 9/30/05).) Based on the foregoing, MetLife's denial of Belcher's request for additional STD benefits was not an abuse of MetLife's discretion.

It is therefore

**ORDERED** that MetLife's decision denying Belcher additional STD benefits is affirmed.

**IT IS SO ORDERED**.

                                                 s/Henry M. Herlong, Jr.
                                                 United States District Judge

Greenville, South Carolina
July 6, 2006